**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DONALD JAMES,**<br>**Individually and as administrator of**<br>**the estate of Jennifer James,**<br><br>             **Plaintiff,**<br><br>      **v.**<br><br>**BARTOW COUNTY, GEORGIA,**<br>**CLARK MILLSAP, in his individual**<br>**capacity and in his official capacity**<br>**as Sheriff of Bartow County,**<br>**Georgia, GARY DOVER, DEREK**<br>**COCHRAN, LT. TINA PALLONE,**<br>**DALLAS WATSON, CAUSEY, JOY**<br>**STANLEY, ANDREA**<br>**CRUTCHFIELD, ARIEL**<br>**HENDRICKS, JEREMY**<br>**GAZERRO, NICOLE AGEE, and**<br>**CORRECT HEATH L.L.C.,**<br><br>             **Defendants.** | **1:16-cv-01381-WSD** |

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Defendants Bartow County, Clark

Millsap, Gary Dover, Derek Cochran, Tina Pallone, Dallas Watson, Causey, Joy

Stanley, Andrea Crutchfield, Ariel Hendricks, and Jeremy Gazerro's (collectively,

the "County Defendants")[1] Motion to Dismiss [20] and Defendants Nicole Agee

and Correcthealth Bartow, LLC's (collectively, the "Medical Defendants") Motion

to Dismiss [23].  Also before the Court is Plaintiff Donald James's Second Motion

to Amend Complaint [24] ("Motion to Amend").

## I.      BACKGROUND

### A.      Facts

Plaintiff is the surviving spouse of Jennifer James ("James") and the

appointed administrator of her estate.  (Second Am. Compl. [24.1] ¶¶ 4-5).

Plaintiff brings this action both individually and as the administrator of James's

estate.

James was a longtime resident of Cartersville, Georgia and had been

incarcerated in the Bartow County Jail many times.  (Id. ¶ 20).  She had a longtime

addiction problem and was being held on a probation revocation for failure to pass

a drug test.  (Id.).  Prior to the incident that gave rise to her death, James had been

an inmate at Bartow County Jail for approximately 215 days.  (Id. ¶ 19).

---

[1]      The Court refers to Defendants Clark Millsap, Gary Dover, Derek Cochran, Tina Pallone, Dallas Watson, Causey, Joy Stanley, Andrea Crutchfield, Ariel Hendricks, and Jeremy Gazerro as the "individual County Defendants."

On April 20, 2014, an inmate at Bartow County Jail smuggled various illegal substances into the county jail, including methamphetamine, heroin, cocaine, and bath salts.  (Id. ¶ 23).  The illegal drugs, once in the jail, were mixed with water and shared, by the smuggling inmate, with other inmates, including James.  (Id.). James became ill after she ingested the mixture.  (Id. ¶ 24).  She lost color in her face and began throwing up and having seizure-like activity.  (Id.).

James's fellow inmates, at first, were too intimidated to push the "panic" or intercom button for fear of possible repercussions from the jailers.[2]  (Id.).  When James's fellow inmates eventually pressed the button to ask for help, another fifteen to twenty minutes past before the first jailer, Defendant Hendricks, arrived. (Id. ¶ 25).  During this 15-minute period, an inmate performed cardiopulmonary resuscitation (CPR) on James while waiting for help to arrive.  (Id.).  When Defendant Hendricks arrived at the pod, she called for Defendant Nicole Agee ("Nurse Agee"), the only medical personnel staffed at that time, for help.  (Id.). Because Nurse Agee was alone in the medical department, she did not come immediately to James's pod.  (Id.).

---

[2]    Plaintiff's Complaint alleges that the county jailers threatened to place the inmates in solitary confinement for using the panic button for non-life-or-death situations.  (Id.).

When the other jailers and Nurse Agee arrived at the pod, James was in her cell lying slightly on her right side awake but gurgling with a clear liquid oozing out of her mouth.  (Id.).  The inmates were yelling for help and directing help to James's cell.  (Id.).  Nurse Agee performed the Heimlich maneuver on James, (id.), while jailers questioned the inmates about contraband, (id. ¶ 26).  James was placed on a gurney in the hall where she remained for the next 45 minutes.  (Id.).  By that time, James was unresponsive with only shallow respiration.  (Id.).

Plaintiff's Complaint alleges that Defendants did not immediately call emergency medical services.  (Id.).  When James was eventually taken to the hospital, she was put on life support and remained in the intensive care unit.  (Id. ¶ 28).

On April 22, 2014, James was discharged from custody by the Bartow County Sheriff's Office.[3]  (Id.).

On April 28, 2014, James died.  (Id.).

---

[3]     Plaintiff's Complaint alleges that the discharge was written at the hospital on a baby wipe.  (Id.).

B.    Procedural History

On April 27, 2016, Plaintiff filed his original Complaint [1].  On May 2, 2016, the Court ordered [2] Plaintiff to file an amended complaint to allege a proper basis for this Court's venue under Local Rule 3.1.  On May 12, 2016, Plaintiff filed his First Amended Complaint [5].  The Amended Complaint alleges, against all Defendants, three violations under 42 U.S.C. § 1983 for failure to protect (Count I), deprivation of the right of due process (Count II), and inadequate medical care (Count III).  The Amended Complaint also alleges two state claims for inadequate medical care under O.C.G.A. § 42-5-2 (Count IV) and breach of official bond against Defendant Millsap (Count V).  (See [5]).  Plaintiff seeks compensatory damages, punitive damages, reasonable attorney's fees, costs, and other such relief as appropriate.  (Id.).

On August 29, 2016, the County Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ([20]). On September 19, 2016, the Medical Defendants also moved to dismiss the Amended Complaint under Rule 12(b)(6).  ([23]).  On September 20, 2016,

Plaintiff filed his Motion to Amend Complaint [24].[4]  As part of Plaintiff's Second Amended Complaint ("Complaint"), Plaintiff moved for permission to dismiss his federal claims against the individual County Defendants in their official capacities, and he moved for permission to dismiss his state law claim against Defendant Bartow County ("Bartow County").  ([24.1] at 1).

## II.   DISCUSSION

### A.   Plaintiff's Motion to Amend Complaint

Rule 15(a) of the Federal Rules of Civil Procedure allows a plaintiff to file one amended complaint as a matter of course, if the amended complaint is filed either within twenty-one (21) days of service of the original complaint or within twenty-one (21) days of the defendant's filing of a responsive pleading or Rule 12 motion to dismiss.  Fed. R. Civ. P. 15(a)(1).  Amended complaints outside of these time limits may be filed only "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

"The decision whether to grant leave to amend a complaint is within the sole discretion of the district court."  Laurie v. Ala Ct. of Criminal Appeals, 256 F.3d

---

[4]      Only the County Defendants filed an opposition to Plaintiff's Motion to Amend.  ([27]).

1266, 1274 (11th Cir. 2001).  Rule 15 of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "There must be a substantial reason to deny a motion to amend."  Laurie, 256 F.3d at 1274.  "Substantial reasons justifying a denial include 'undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'"  Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, the Court required Plaintiff to file its First Amended Complaint to add venue allegations.  ([2]).  Because the First Amended Complaint was not filed by the Plaintiff as "a matter of course" but upon an Order of the Court, the Court finds that Plaintiff's court-ordered First Amended Complaint did not qualify as Plaintiff's amendment allowed as a matter of course under Rule 15.  Plaintiff thus was entitled to file an amended complaint as a matter of course, as long as it filed the amended complaint within the time limits prescribed by Rule 15.  "[A] plaintiff [however] waives the right to amend his complaint as a matter of course if he chooses to file a motion to amend instead of filing the amended complaint as a matter of course."  Toenniges v. Ga. Dep't of Corr., 502 F. App'x 888, 889 (11th

Cir. 2012) (citing <u>Coventry First, LLC v. McCarty</u>, 605 F.3d 865, 869 (11th Cir.

2010)).  Because Plaintiff filed a Motion to Amend outside the time limits

prescribed by Rule 15, the amended pleading must be filed with leave of the Court.

Fed. R. Civ. P. 15(a)(2).

The County Defendants oppose Plaintiff's Motion to Amend, arguing that

the requested amendment would be futile.[5]  The Medical Defendants do not oppose

the motion, but in their own Motion to Dismiss, assert that Plaintiff's First

Amended Complaint failed to "mention any facts involving" the Medical

Defendants and contained "not one factual allegation [concerning what the

---

[5]     Futility is one of the reasons for denying a motion to amend a complaint.
<u>Foman</u>, 371 U.S. at 182.  An amendment is considered futile if the additional facts
do not state a claim upon which relief can be granted.  <u>Rudolph v. Arthur
Andersen & Co.</u>, 800 F.2d 1040, 1042 (11th Cir. 1986).  In our Circuit, a proposed
amendment is futile when the allegations of the proffered complaint would be
unable to withstand a motion to dismiss.  <u>Amick v. BM & KM, Inc.</u>, 275 F. Supp.
2d 1378, 1381 (N.D. Ga. 2003) (citing <u>Vanderberg v. Donaldson</u>, 259 F.3d 1321,
1326-27 (11th Cir. 2001); <u>Wyatt v. BellSouth, Inc.</u>, 176 F.R.D. 627, 630-31 (M.D.
Ala. 1998) ("In deciding whether an amendment to the complaint would be futile,
the court should be guided by the principles that govern consideration of a motion
to dismiss.").  In the County Defendants' response to Plaintiff's Motion to Amend,
the County Defendants incorporated "their motion to dismiss Plaintiff's first
amend complaint" and also incorporated their "reply to Plaintiff's response in
opposition to said motion to dismiss."  ([27] at 2 n.1).  The Court therefore
addresses the question whether Plaintiff's amendment is futile as to the County
Defendants as challenged in the County Defendants' Motion to Dismiss.

Medical Defendants] did or failed to do which caused harm to Plaintiff's Decedent." ([23.1] at 4).  Plaintiff asserts, and the Court agrees, that the Second Amended Complaint provides "additional information for the Court to analyze the allegations he has made against the Defendants while providing the Defendants with additional clarification and information concerning the allegations made against them." ([24] at 1-2).  Considering that a leave to amend should be freely given when justice so requires and because there is no substantial reason justifying a denial, the Court grants Plaintiff's Motion to Amend to allege additional facts in support of his claims against the Medical Defendants.  The Medical Defendants' Motion to Dismiss [23] therefore is denied as moot.[6]

B.      The County Defendants' Motion to Dismiss

1.      Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual

---

[6]      Plaintiff's Second Amended Complaint "supersedes" the previous complaint and "becomes the operative pleading in the case."  Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007).  The Medical Defendants' Motion to Dismiss does not address Plaintiff's Second Amended Complaint and is insufficient to serve as a proper motion to dismiss.

inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir.

2010).  Although reasonable inferences are made in the plaintiff's favor,

"'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte

Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water

Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the

Court is not required to accept conclusory allegations and legal conclusions as true.

See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)

(construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly,

550 U.S. 544 (2007)).

 "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Mere "labels and

conclusions" are insufficient.  Twombly, 550 U.S. at 555.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than

the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting

Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly,

550 U.S. at 570).

### 2.    Preliminary Matters

Having determined that Plaintiff's Motion to Amend may be filed, the Court

finds that certain claims against the County Defendants are now moot.  Plaintiff

has withdrawn his federal claims against the County Defendants in their official

capacities as actors for the State of Georgia and has withdrawn his state law claim

against Bartow County.  (See [24.1] at 1).  To the extent that the County

Defendants' Motion to Dismiss addresses these issues, the Motion to Dismiss is

moot.[7]

### 3.    Section 1983 Civil-Rights Claims

Section 1983 provides a private cause of action against any person who,

under color of law, deprives an individual of "any rights, privileges, or immunities

secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.

Section 1983 provides a remedy for violations of rights secured by federal

statutory as well as constitutional law.  Martes v. Chief Exec. Officer of

---

[7]    In the County Defendants' response to Plaintiff's Motion to Amend,
"Bartow County agrees that the state law claims against it should be dismissed."
([27] at 11).

S. Broward Hosp. Dist., 683 F.3d 1323, 1325 (11th Cir. 2012) (citing Maine

v. Thiboutot, 448 U.S. 1, (1980)).  "[T]o seek redress through Section 1983, 'a

plaintiff must assert the violation of a federal *right,* not merely a violation of

federal *law*.'" Id. (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997)); see

also Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) ("[I]t is *rights,* not the

broader or vaguer 'benefits' or 'interests,' that may be enforced under [Section

1983].").  An underlying constitutional right must exist before a section 1983

action will lie.  Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030,

1032 (11th Cir. 1987).

    a)  Bartow County

  The County Defendants assert that Bartow County cannot be liable under

42 U.S.C. § 1983 for the actions of Defendant Clark Millsap ("Sheriff Millsap") or

his deputies.  ([20.1] at 7; [27] at 5).  The gravamen of the County Defendants'

assertion is that counties in Georgia "have no authority or control over, and no role

in, Georgia sheriffs' law enforcement functions."  ([20.1] at 9 (citing Grech

v. Clayton Cty. Ga., 335 F.3d 1326, 1336 (11th Cir. 2003); see also [27] at 5

(discussing Robinson v. Houston Cty., No. 5:09-CV-156 (CAR), 2010 WL

2464901, at *4 (M.D. Ga. June 14, 2010), where the court dismissed Houston

County even though the county had knowledge of the Sheriff's improper policies)). Plaintiff asserts that <u>Grech</u> and the other cases considered "law enforcement functions only" and not to the provision of adequate medical care.  ([25] at 11-12).

In our Circuit, "whether a sheriff acts on behalf of the state or county is a question that cannot be answered absolutely, but one that, rather, 'must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise.'"  <u>McDaniel v. Yearwood</u>, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *7 (N.D. Ga. Feb. 16, 2012) (quoting <u>Manders v. Lee</u>, 338 F.3d 1304 (11th Cir. 2003)).  It is well established, however, that "sheriffs do not act on behalf of the state" when sheriffs provide or deprive plaintiff of "medical care."  <u>McDaniel</u>, 2012 WL 526078, at *9 (finding that "counties have a statutory obligation to provide inmates in county jails").  "With respect to county jails, [O.C.G.A.] section 42-5-2 imposes two separate duties: the county must fund the provision of medical care, and the sheriff must select an appropriate provider and ensure that inmates receive care when necessary."  <u>Lake v. Skelton</u>, 840 F.3d 1334, 1341 (11th Cir. 2016).

Plaintiff's Complaint alleges that Bartow County failed to provide adequate funding to address the medical needs of inmates incarcerated at Bartow County

13

Jail.  ([24.1] ¶¶ 25, 29, 34, 37).  Although the Medical Defendants are the parties responsible for providing medical care to those at the Bartow County Jail, it is Bartow County and Sheriff Millsap who are ultimately responsible for providing medical care to these inmates.[8]  "Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705 (11th Cir. 1985) (citations omitted).  If plaintiff can establish, as he alleges, that Bartow County or Sheriff Millsap established or utilized a policy or custom of not providing adequate funds for medical coverage, then that policy or custom may have played a role in any deliberate indifference to James's medical needs.  At this stage in the litigation, the Court cannot say whether Nurse Agee's delay was due to her alleged deliberate indifference or due to the county's decision not to provide funding for additional

---

[8]     Georgia law places the responsibility for an inmate's medical care on the county.  See Cherokee County v. North Cobb Surgical Assocs., P.C., 471 S.E.2d 561, 564 (Ga. Ct. App. 1996); O.C.G.A. § 42-5-2 ("[I]t shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention . . . .").  "The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals."  Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705 (11th Cir. 1985).

14

staffing by medical professionals.  The Court declines to dismiss Bartow County at this early stage of litigation.[9]

> b)    <u>Individual County Defendants</u>[10]

> (1)    <u>Inadequate Medical Care</u>

The Eighth Amendment of the United States Constitution forbids "cruel and unusual punishments."  U.S. Const. Amend. VIII.  The Eighth Amendment applies to the states through the Fourteenth Amendment.[11]  <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1288 n.20 (11th Cir. 2004).  The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners."  <u>Estelle v. Gamble</u>, 429 U.S.

---

[9]    Plaintiff, however, cannot rely on a generalized policy of underbudgeting but must demonstrate that Bartlow County had a "deliberate intent" to inadequately staff the medical personnel.  <u>See</u> <u>McDowell v. Brown</u>, 392 F.3d 1283, 1294 (11th Cir. 2004); <u>cf.</u> <u>Anderson v. City of Atlanta</u>, 778 F.2d 678, 686 (11th Cir. 1985)(upholding jury's finding that if the city had not utilized a policy of inadequately staffing the detention center, the pre-trial detainee would not have died from drug overdose in the Fulton County jail).

[10]    For the individual County Defendants, Plaintiff only asserts his federal claims in their individual capacities.  ([24.1] at 1).

[11]    The Due Process Clause of the Fourteenth Amendment protects a pre-trial detainee, and the protection corresponds with that provided to prisoners by the Eighth Amendment.  <u>E.g.</u>, <u>Thomas v. Town of Davie</u>, 847 F.2d 771, 772 (11th Cir. 1988); <u>H.C. by Hewett v. Jarrard</u>, 786 F.2d 1080, 1086 (11th Cir. 1986); <u>see also</u> <u>City of Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239 (1983).  Because James was convicted at the time of her death, the relevant constitutional provision thus is the Eighth Amendment, and Plaintiff's claim for deprivation of right of due process (Count II) is dismissed.

97, 104 (1976); <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) ("It is well established that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.").  "However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>McElligott v. Foley</u>, 182 F.3d 1248, 1254 (11th Cir. 1999) (quotations omitted); <u>see also</u> <u>Estelle</u>, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

To establish deliberate indifference, a plaintiff must establish "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  A defendant is deliberately indifferent only if he subjectively knew of a risk of serious harm and disregarded that risk by conduct beyond gross negligence.  <u>Pourmoghani-Esfahani v. Gee</u>, 625 F.3d 1313, 1317 (11th Cir. 2010).  The defendant's conduct must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991); <u>see</u> <u>Wallace</u>, 615 Fed. Appx. at 667.  "Deliberate indifference" can

16

include "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified."  Taylor v. Adams, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (internal quotation omitted).

Plaintiff's Complaint alleges that once Defendant Hendricks arrived at James's pod, she called for Nurse Agee.  There is no allegation that any of the individual County Defendants prevented or thwarted Nurse Agee from providing medical care.[12]  Although Plaintiff's Complaint alleges that the individual County Defendants "were more interested in questioning the inmates about contraband than getting Jennifer James to medical" and that they left James "on a gurney in the hall in the pod for 45 minutes before she was taken to medical," the Court declines to find that those conducts were beyond gross negligence.  Prison staff may rely on the medical judgments made by medical professionals responsible for prisoner care.  Williams v. Limestone Cty., Ala., 198 F. App'x 893, 897 (11th Cir. 2006);

---

[12]    The inmates' own delay in seeking for help also does not show that the individual County Defendants were deliberately indifferent to the James's medical condition.  Plaintiff's Complaint does not allege that the inmates were discouraged from ever seeking medical help.

see also Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1050 (11th Cir. 2014); Berry

v. Peterman, 604 F.3d 435 (7th Cir. 2010) (the law with respect to prisoners'

Eighth Amendment deliberate-indifference claims encourages non-medical

personnel at jails and prisons to defer to the professional medical judgments of the

physicians and nurses treating the prisoners in their care without fear of liability for

doing so); Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (a claim of medical

indifference cannot generally be against non-medical personnel, unless they

personally involved themselves with a denial of treatment or deliberately interfered

with the medical treatment), overruled in part on other grounds by Farmer

v. Brennan, 511 U.S. 825, 840 (1994).  Without making any determination as to

Nurse Agee's conduct, the Court concludes that Plaintiff failed to allege conduct

sufficient to assert a claim against the individual County Defendants for deliberate

indifference to James's serious medical condition.

(2)    Failure to Protect

Plaintiff next asserts that the individual County Defendants failed to

protect James from "the flow of illegal drugs into the Bartow County Jail" and

exposed James "to excessive danger" (Count I).  ([24.1] ¶ 40).  The Eighth

Amendment imposes a duty on prison officials to "take reasonable measures to

18

guarantee the safety of the inmates." Farmer, 511 U.S. at 832. "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (quotations and alterations omitted); see also Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam) ("Prisoners have a constitutional right to be protected from violence while in custody."). To state a failure-to-protect claim sufficiently, Plaintiff must allege that James endured conditions "posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Plaintiff's Complaint must also allege that the individual County Defendants violated the Eighth Amendment by being deliberately indifferent when they knew of, and disregarded, the excessive risk to James's safety. See id. at 835. Negligence, or a lack of due care under the circumstances, is insufficient to support a claim that the defendants failed to protect a prisoner. Davidson v. Cannon, 474 U.S. 344, 347 (1986).

Plaintiff's Complaint generally alleges that the County Defendants had customs or policies of improperly screening for illegal drugs, improperly restricting inmates from seeking help, and inadequately funding for medical staff. Although a substantial risk to a prisoner's safety may arise out of such conditions as alleged, Plaintiff has failed to specifically allege facts demonstrating that there

19

was indeed a substantial risk to James's safety and that each individual County Defendant subjectively knew about it but knowingly or deliberately disregarded it.

Plaintiff's Complaint alleges that the Bartow County Sheriff's Office recognized that the county jail must prevent "the introduction of contraband" into the facility.  ([24.1] ¶ 32; [5.1]).  Under this policy, the jailers subject the inmates to squat-and-cough search, which according to the Complaint, is "merely cursory," and the county jail allows "the introduction of contraband on a regular basis." ([24.1] ¶ 32).  However, it is not enough to generically allege an influx of drugs into the jail, Plaintiff's Complaint must also demonstrate that each individual County Defendant subjectively knew of the risk of James's ingesting the illegal drug from the influx.  Accordingly, the Court finds that Plaintiff failed to allege a failure-to-protect claim against the individual County Defendants.

4.    State Law Claims

In Count IV, Plaintiff brings a state law claim against Sheriff Millsap in his official capacity and against the individual County Defendants in their individual capacities under O.C.G.A. § 42-5-2.[13]  Plaintiff's Complaint alleges that the

_____

[13]    Plaintiff also brings a state law claim against Sheriff Millsap for breach of official bond (Count V).  ([24.1]).  The alleged bond is a statutory bond issued

20

individual County Defendants violated Georgia statutes requiring the county to provide medical care to James.  The Georgia Court of Appeals has never construed O.C.G.A. § 42-5-2 "to mean that a sheriff acts on behalf of the county when he provides medical care." [14]  Lake, 840 F.3d at 1341.  The Georgia Court of Appeals, instead, "distinguishes between the duty imposed by section 42-5-2 on a county to fund medical care and the duty of a sheriff to provide medical care [under section 42-4-32]."  Id. (quoting Tattnall Cty. v. Armstrong, 775 S.E.2d 573, 577 (Ga. Ct. App. 2015) (en banc) (explaining that O.C.G.A. § 42-4-4(a)(2) "places certain duties on a sheriff to provide an inmate with medical care," whereas O.C.G.A.

---

under O.C.G.A. § 15-16-5, which requires "a sheriff to give a bond conditioned on his faithful accounting for funds and property."  Lord v. Lowe, 741 S.E.2d 155, 157 (Ga. Ct. App. 2012).  Because the current version of O.C.G.A. § 15-16-5 mandates a narrower scope of coverage, "the broader condition required for public official bonds" by O.C.G.A. § 45-4-1 does not apply.  Lord, 741 S.E.2d at 157 (citing Glinton v. And R, Inc., 524 S.E.2d 481 (Ga. 1999).  Accordingly, Plaintiff's Complaint failed to allege a claim for breach of official bond.

[14]     Georgia statutes do not waive sovereign immunity with respect to O.C.G.A. § 42-5-2.  The Georgia Court of Appeals has held that "a plaintiff's tort claim for failure to provide adequate medical care pursuant to § 42-5-2 [i]s barred by sovereign immunity."  Robinson v. Integrative Det. Health Servs., Inc., No. 3:12-CV-20 CAR, 2013 WL 331200, at *5 (M.D. Ga. Jan. 29, 2013); see Gish v. Thomas, 691 S.E.2d 900, 908 (Ga. Ct. App. 2010) (O.C.G.A. § 42-5-2 imposes cost of medical care on the county but did not waive sovereign immunity of the county).  In contrast, sovereign immunity does not bar "claims for failure to *pay for* medical care."  Robinson, 2013 WL 331200, at *5 (citing Macon-Bibb Cty. Hosp. Auth. v. Houston Cty., 428 S.E.2d 374 (Ga. Ct. App. 1993)).

§ 42-5-2(a) "imposes upon the county the duty and cost of medical care for inmates"), overruled on other grounds by Rivera v. Washington, 784 S.E.2d 775 (Ga. 2016)).  To the extent that Plaintiff seeks to assert a claim under O.C.G.A. § 42-5-2 against the individual County Defendants, Plaintiff has failed a state a claim.

III.   **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Donald James's Second Motion to Amend Complaint [24] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Medical Defendants' Motion to Dismiss [23] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the County Defendants' Motion to Dismiss [20] is **GRANTED IN PART and DENIED IN PART**.  The County Defendants' Motion is **GRANTED** with respect to Defendants Clark Millsap, Gary Dover, Derek Cochran, Tina Pallone, Dallas Watson, Causey, Joy Stanley, Andrea Crutchfield, Ariel Hendricks, and Jeremy Gazerro.  The County Defendants' Motion is **DENIED** with respect to Defendant Bartow County.

**IT IS FURTHER ORDERED** that Plaintiff shall file a Second Amended

22

Complaint consistent with this Opinion and Order no later than Monday,

March 6, 2017.  No further amendments will be allowed.


        **SO ORDERED** this 27th day of February, 2017.




                              WILLIAM S. DUFFEY, JR.
                              UNITED STATES DISTRICT JUDGE

23