IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DONALD JAMES, Individually and as Administrator of the Estate of JENNIFER JAMES, <br><br> Plaintiff, <br><br> v. <br><br> NICOLE AGEE and CORRECTHEALTH BARTOW, LLC, <br><br> Defendants. | 1:16-CV-01381-ELR |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. 51]. The Court's rulings and conclusions are set forth below.

**I.    Background**

   A. Procedural Background

Plaintiff Donald James, individually and as Administrator of the Estate of Jennifer James, filed suit, pursuant to 42 U.S.C. § 1983, against Defendants Nicole Agee and CorrectHealth Bartow, LLC ("CorrectHealth") alleging violation of the constitutional rights of his late-wife, Jennifer James ("Ms. James"). At the time relevant to this case, CorrectHealth was the medical provider at the Bartow County

Jail ("Jail") and Nicole Agee ("Nurse Agee") was employed by CorrectHealth at the Jail as a licensed practical nurse.  Specifically, Plaintiff alleges that while Ms. James was in custody at the Jail, Defendants violated her constitutional rights in delaying medical care.  Nurse Agee and CorrectHealth are the only two defendants that remain in this action.[1]  Defendants filed a motion for summary judgment [Doc. 51], which Plaintiff opposes [Doc. 55].[2]  This motion is now ripe for the Court's review.

### B. Factual Background

At the time relevant to this case, Ms. James was an inmate at the Jail for a probation violation.  Ms. James was housed in the D-Pod, Section C of the Jail.  Defs.' Statement of Material Facts to Which No Genuine Dispute Exists for Trial at ¶ 4 [Doc. 51-2] ("Defs.' SOMF").  On April 20, 2014, Ms. James apparently took illicit drugs smuggled into the Jail by another inmate.  Id. at ¶¶ 1-2.  Ms. James became ill from the illicit drugs and was ill for several hours before Jail staff was

---

[1] On February 27, 2017, the Honorable William S. Duffey, who originally presided over this case before it was transferred to the undersigned, granted in part and denied in part Defendants Clark Millsap, Gary Dover, Derek Cochran, Tina Pallone, Dallas Watson, Causey, Joy Stanley, Andrea Crutchfield, Ariel Hendricks, Jeremy Gazerro ("Individual County Defendants"), and Bartow County's motion to dismiss. [Doc. 31]. Specifically, Judge Duffey granted Plaintiff's motion to amend his complaint, but determined that allowing amendment of the complaint for the Individual County Defendants would be futile, based on their arguments raised in their motion to dismiss. However, Judge Duffey determined that allowing amendment as to Bartow County would not be futile.  Defendants CorrectHealth and Nurse Agee did not oppose the motion to amend. Accordingly, after Judge Duffey's February 27, 2017 Order, the only remaining Defendants were Bartow County, CorrectHealth, and Nurse Agee. [Doc. 31 at 22].  Then, on June 29, 2017, the Clerk of Court approved a Stipulation of Dismissal filed by Plaintiff and Defendant Bartow County, dismissing Bartow County from this action.
[2] After careful review, the Court grants "Plaintiff's Motion to File Documents in Opposition to Defendants' Motion for Summary Judgment" [Doc. 55].

notified of her illness. Id. at ¶ 3. In the evening, the other inmates noticed Ms. James "seizing, . . . her eyes rolled in the back of her head[,] . . . [a]nd her lips turned blue like she wasn't breathing." See Leah Rae Jordan Edmondson Dep. at 7:2-4 [Doc. 53] ("Edmondson Dep."); Jessica Smith Ramsey Dep. at 9:4 [Doc. 52] ("Ramsey Dep."). In response, one of the other inmates "pressed the [panic] button to tell the officers" that Ms. James "wasn't breathing." Edmondson Dep. at 7:5-6, 9:6; Ramsey Dep. at 9:11. After the panic button was pressed, an officer responded through the two-way intercom system that, *inter alia*, "someone would be there when they [could] get there." Edmondson Dep. at 8:20-25.

Upon notification, Nurse Agee went to Ms. James' cell. Defs.' SOMF at ¶ 8. When Nurse Agee entered Ms. James' cell, three or four inmates were surrounding Ms. James. Id. at ¶ 9. Officers ushered these inmates out of Ms. James' cell and ordered all inmates to their rooms. Id. at ¶¶ 10-11. When Nurse Agee entered Ms. James' cell, Ms. James was lying on her bed slightly on her right side with clear fluid coming from her mouth but Nurse Agee did not see any active signs of a seizure. Id. at ¶¶ 12, 15. Nurse Agee assisted Ms. James onto her right side to prevent choking and asked Sergeant Dallas Watson if he could find out from other inmates what happened prior to Nurse Agee's arrival, while Nurse Agee continued to assess Ms. James. Id. at ¶ 18. Nurse Agee asserts that the other inmates did not state that Ms. James ingested illicit drugs, but only stated that Ms. James was throwing up and

3

using a wash cloth to wipe her mouth. Id. at ¶ 19. "Deputy [Andrea] Crutchfield asked [Ms.] James if she had taken anything other than her medications and [Ms.] James shook her head no indicating she had not." Id. at ¶ 21. At some point, Deputy Benjamin Fletcher retrieved a stretcher to move Ms. James to the infirmary, and while on the stretcher, Nurse Agee continued to monitor and assess Ms. James. Id. at ¶ 23; Nicole Agee Aff. at ¶¶ 24-25 [Doc. 51-3] ("Agee Aff."); Benjamin Fletcher Decl. at ¶¶ 8-11 [Doc. 51-7] ("Fletcher Decl."). An ambulance was called at 11:42 P.M., the ambulance was in route at 11:44 P.M., and the ambulance arrived at the Jail at 11:48 P.M. See Bartow Cty. Computer Assisted Dispatch Report at 1 [Doc. 51-9] ("Dispatch Report").[3] Ms. James was taken to the Cartersville Hospital ("Hospital"). See Defs.' SOMF at ¶ 37. Ms. James passed away in the intensive care unit at the Hospital after several days on life support. Id. at ¶¶ 37, 39-40. At the Hospital, Ms. James tested positive for a lethal amount of methamphetamine. Id. at ¶ 41.

---

[3] Plaintiff argued in his response brief that the Dispatch Report is inadmissible at the summary judgment stage; however, evidence is admissible at summary judgment if it can be reduced to admissible form at trial. Lenning v. Brantley, Cty., Ga., 579 F. App'x 727, 732 n.3 (11th Cir. 2014) (reports were viable summary judgment evidence that could be reduced to admissible form at trial.). Defendants asserted that the Dispatch Report can be reduced to admissible form at trial, and the Court agrees. Accordingly, the Court will consider the Dispatch Report in ruling on Defendants' motion for summary judgment.

4

## II. Discussion

### A. Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. Id. The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324-26.

5

The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

B. Analysis

  i. *Nurse Agee*

Plaintiff contends that Nurse Agee was deliberately indifferent to Ms. James' serious medical needs in violation of her rights under the Eighth Amendment to the United States Constitution.[4] The Eighth Amendment forbids "cruel and unusual punishments." U.S. Const. amend. VIII. Specifically, the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) ("It is well established that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (internal quotations omitted). "To prevail on a § 1983 claim alleging a violation of that right, a plaintiff must satisfy both an objective and subjective inquiry." McBride v. Houston Cty. Health Care Auth., 658

---

[4] Plaintiff asserts that Ms. James was being held for violating her probation, and thus, the Eighth Amendment applies. See Williams v. Limestone Cty., Ala., 198 F. App'x 893, 895 n.3 (11th Cir. 2006) ("Williams was being held as a convicted prisoner for violating his probation, in which case the Eighth Amendment applies[.]").

F. App'x 991, 996 (11th Cir. 2016) (quoting Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015)); see also Brown, 387 F.3d at 1351.

Regarding the objective inquiry, Plaintiff must show that Ms. James suffered an objectively serious medical need. McBride, 658 F. App'x at 996. "In our circuit, a serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Here, the parties do not appear to dispute Ms. James' serious medical need.

To satisfy the subjective inquiry, Plaintiff "must prove that [Nurse Agee was] deliberately indifferent to her serious medical need." McBride, 658 F. App'x at 997 (quoting Valderrama, 780 F.3d at 1116).

> More specifically, the plaintiff must present, for each officer, evidence from which a reasonable jury could conclude that (1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the officer actually drew that inference, (3) the officer disregarded the risk of serious harm, and (4) the officer's conduct amounted to more than gross negligence.

McBride, 658 F. App'x at 997 (quoting Valderrama, 780 F.3d at 1116). More importantly, "[a]n unreasonable delay in treatment may constitute unconstitutional deliberate indifference, whether or not it exacerbated the condition, if the delay results in wanton infliction or pain." McBride, 658 F. App'x at 997. "The tolerable length of delay in providing medical attention depends on the nature of the medical

need and the reason for the delay. A few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference." Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994).

Here, the parties do not appear to dispute that Nurse Agee was aware of the substantial risk of serious harm to Ms. James. However, the gravamen of the parties' dispute is whether Nurse Agee disregarded the risk of serious harm through an unreasonable delay in treatment, and whether Nurse Agee's alleged delay in treatment amounted to more than gross negligence. Specifically, Plaintiff argues that there was at least a 25-minute delay before Ms. James was transported out of the D-Pod, and thus, Nurse Agee was deliberately indifferent. However, viewing the evidence in Plaintiff's favor, the record does not support Plaintiff's contention that Nurse Agee was deliberately indifferent.

Evidence of the exact time the panic button was pressed is not offered in the record and there is disputing testimony in the record of the length of time it took for someone to respond after the panic button was pressed. Specifically, Leah Rae Jordan Edmondson, an inmate at the Jail at the time of the incident, testified at her deposition that although she did not have a watch or clock to know the exact time, it took about five (5) or ten (10) minutes from the time an inmate pressed the panic button until someone arrived in the pod to assess Ms. James. Edmondson Dep. at 9:8-15. Jessica Smith Ramsey, another inmate at the Jail at the time of the incident,

8

testified at her deposition that "it just seemed like it took forever . . . I want to say I feel like it took at least 15 minutes for a nurse to get back there." Ramsey Dep. at 9:12-14. Nurse Agee asserted that she and Deputy Fletcher immediately went to the floor of the D-Pod after receiving notification that a female inmate was experiencing a seizure. Agee Aff. at ¶¶ 7-8.

While the exact time the panic button was pressed and the exact time it took officers and Nurse Agee to respond is not included in the record, it is undisputed that "at approximately 11:36 P.M. by Nurse Agee's watch . . . Nurse Agee and Deputy Fletcher were about to get on the elevator . . . on the 4th floor, when a call came over Deputy Fletcher's radio that a female inmate was reported as having a seizure." Defs.' SOMF at ¶ 5. The Bartow County incident report shows that an ambulance was called for a "female having a seizure" at 11:42 P.M., the ambulance was in route at 11:44 P.M., and that the ambulance arrived at the Jail at 11:48 P.M. See Dispatch Report at 1. Therefore, there was a 12-minute time frame between Nurse Agee receiving the notification of Ms. James' condition at 11:36 P.M. and the ambulance arriving at the Jail by 11:48 P.M. The record also shows that Nurse Agee continuously monitored and assessed Ms. James until the emergency personnel arrived. Defs.' SOMF at ¶ 23; Agee Aff. at ¶¶ 24-25; Fletcher Decl. at ¶¶ 8-11; Dispatch Report at 1.

Accordingly, in this context, a 12-minute time frame of medical assistance is not a constitutional violation. See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1283 (11th Cir. 2017) (affirming a grant of summary judgment in favor of defendants that there was no constitutional violation, in part, because a doctor, after examining the inmate, immediately directed the inmate be transported to the emergency room, and "there was about a 15-minute delay" in the inmate's transport); see also Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317-18 (11th Cir. 2010) (reversing denial of summary judgment for defendants where pretrial detainee "received reasonably prompt" and "continuous medical care until she was taken to the hospital" for "having symptoms of a possible overdose and had an apparent seizure," and reasoning that even if there was a "delay" it was only a matter of minutes); cf. Brown v. Hughes, 894 F.2d 1533, 1538-39 (11th Cir. 1990) (finding deliberate indifference where inmate with a broken foot was delayed treatment for a few hours); Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11th Cir. 1985) (finding deliberate indifference where inmate had bleeding cut under his eye and treatment was delayed for two and a half hours).

Nevertheless, Plaintiff continues to argue that there was at least a 25-minute delay in transporting Ms. James out of D-Pod counting from when the panic button was pressed until the ambulance arrived. However, Plaintiff fails to distinguish between the time the inmates pressed the panic button and the time Nurse Agee was

notified of Ms. James' condition. There is no evidence in the record that suggests that the moment the panic button was pressed, a medical professional, such as Nurse Agee, was notified of the situation, or if an officer was initially notified, the steps that officer must take to notify a medical professional. Instead, the record undisputedly shows that Nurse Agee was notified at 11:36 P.M. and an ambulance arrived at the Jail at 11:48 P.M., which is hardly a delay. As no reasonable jury could find that Nurse Agee was deliberately indifferent to Ms. James' medical condition, the Court grants Defendants' motion for summary judgment as to Nurse Agee.

### ii. CorrectHealth

Plaintiff's allegations against CorrectHealth "are properly analyzed through the lens of municipal liability." Colardo-Keen v. Rockdale Cty., Ga., No. 1:14-CV-489-MHS, 2017 WL 4475930, at *17 (N.D. Ga. July 12, 2017). "When a private entity like [CorrectHealth] contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state." Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "In so doing, it becomes the functional equivalent of the municipality." Id. Thus, the proper standard for assessing Plaintiff's allegations against CorrectHealth is that arising under Monell v. Department of Social Services of New York City, 436 U.S. 658 (1978). Id.

11

Under Monell, local government units such as counties constitute "persons" subject to suit pursuant to § 1983. 436 U.S. at 690. However, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691. Such liability attaches only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. Thus, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).

Here, Plaintiff never asserts an "officially promulgated" policy that permits or encourages deliberate indifference. Thus, Plaintiff must show that CorrectHealth has a custom or practice of permitting a particular constitutional violation and that the CorrectHealth's custom or practice is the moving force behind the constitutional violation. Colardo-Keen, 2017 WL 4475930, at *9 (citing McDowell, 392 F.3d at 1289). Plaintiff has failed to do so and merely relies on Ms. James' demise, without showing any custom or practice of CorrectHealth. And, as stated above, the Court does not find that Ms. James' constitutional rights were violated by Nurse Agee. Accordingly, after reviewing the evidence in the light most favorable to Plaintiff, the

Court concludes that no reasonable jury could hold CorrectHealth liable to Plaintiff pursuant to Monell, and thus, the Court grants summary judgment to CorrectHealth.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** "Plaintiff's Motion to File Documents in Opposition to Defendants' Motion for Summary Judgment" [Doc. 55] and Defendants' Motion for Summary Judgment [Doc. 51].

**SO ORDERED**, this 28th day of September, 2018.

*Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia